YARRUT, Judge.
Plaintiff-Appellant agreed to purchase a residence, designated by Municipal No. 6203 Beauregard Avenue, Lake Vista, New Orleans, from Defendants-Mr. and Mrs. Irwin. Mrs. Gertrude Gardner, Inc., the real estate agent who negotiated the agreement of purchase, is the other Defendant.
Plaintiff-Appellant seeks a rescission of the agreement and the return of the deposit of $3050.00 he made on account of the purchase price with Defendant-real estate agent, plus an additional $3050.00 from the Defendants-Irwin as the double of the deposit provided in agreement in case of vendors’ default.
The basis for the rescission is the hidden and non-apparent redhibitory structural defects in the residence, as follows:
“A. Foundation defects, resulting in considerable, irregular settlement of the house; foundation settlement which has cracked the foundation slab and formed a swale alongside the wall in the patio; this area accumulates and retains water, and the bed-room floor adjacent to the patio is badly warped as a result of water seepage from the patio;
“B. Foundation settlement has also caused cracks in the floor and walls, and racking of the door frames;
“C. There is a defect in the design of the concrete slab in that no expansion joints were provided to isolate the exposed patio slab from the protected interior floor slab;
“D. The foundation was defectively designed, and petitioner alleges on information and belief that no registered architect or engineer was responsible for the structural design of the building;
“E. The central air-conditioning system is inadequate; the air-conditioning unit in the kitchen does not work and is not worth repairing;
“F. Due to the settling of the house, the kitchen door does not close, as well as other doors in the house;
“G. Termites are present in several sections of the house, particularly in said bed-room adjoining the patio where water seepage occurs.”
Defendant-vendors answered denying the existence of redhibitory vices in construction, but, in the alternative, if such are held to exist, that they offered to make repairs, which Plaintiff refused; and, further in the alternative, they pray for specific performance against Plaintiff. Defendant-real estate agent filed an answer with a prayer for judgment against the party responsible for the default, and, in the alternative, for 6% of rentals collected by Defendant-owners during a period Plaintiff-purchaser was permitted to occupy the premises under a monthly lease arrangement of $350.00 pending the completion of the agreement of sale, plus their attorney’s fee.
At the outset, it is significant to note that the agreement between the parties was a hybrid arrangement, a combination agreement of sale and lease. Plaintiff-purchaser was to occupy the premises for one year before taking title, at a monthly rental of $350.00, and at the signing of the agreement paid seven months’ rent in advance, or $2450.00 to Defendant-owners. Plaintiff discovered the defects shortly after moving in and complained to Defendant-agent, but *650 decided, having already paid the rent for seven months, to “stick it out” and act on his attorney’s advice and that of expert engineers.
The trial court rendered judgment on the main demand, dismissing Plaintiff’s suit, at his cost; and judgment on the reconven-tional demand in favor of Defendant-owners, ordering Plaintiff to specifically perform the agreement, for the price of $59,200.00, the contract price, less $1800.00 the cost of repairing the defects complained of. The court further rendered judgment in favor of Defendant-vendors for $2500.00 attorney’s fees incurred in the litigation; and for $2960.00 in favor of Defendant-real estate agent, payable out of the proceeds of sale of the property, at the act of sale; and further judgment for $300.00 against Plaintiff-Appellant in favor of Defendant-real estate agent, as attorney’s fee for defending the suit; Plaintiff-Appellant to pay all costs of the proceedings.
As the basis for the judgment, the trial court gave reasons as follows:
“After hearing the testimony of the witnesses and experts of both plaintiff and defendants, the Court concludes as follows:
“First, that the building is structurally sound and its foundation is safe, sound and adequate. It was contended by the plaintiff that the surface crack in the terrazzo in the living-dining room area continued through the concrete foundation slab, resulting in a defective foundation. While the testimony of two experts was to the effect that the crack in the terrazzo extended into the slab, the Court is convinced that the structural strengths of the slab was not effected thereby. The Court is satisfied that even if this small crack in the terrazzo continued through the concrete slab, that as a matter of fact such a crack would not constitute a foundation defect. It is undisputed by the experts and by the uncontradicted testimony of the contractor and owners that this slab contains abundant wire meshing and reinforcing steel rods. It is also undisputed that the surface crack in the terrazzo was apparent upon the completion of the house approximately six years ago. The Court finds from the evidence produced at the trial and from his own personal observation that the house is level and has not settled by any discernible degree and finds therefore that its foundation is safe, sound and adequate. The Court finds no redhibitory vice in the foundation of the structure, such as would render the property either absolutely useless or its use so inconvenient and imperfect that it must be supposed that the buyer would not have purchased it had he known of the vice.
"Second, the Court finds that there was no representation by the defendants and no agreement by and between the parties relating to a pile foundation. The evidence bears out that numerous houses in the immediate vicinity of 6302 Beauregard Avenue are not constructed on pile foundations. The foundation of the structure is safe, sound and adequate and in conformity with similar foundations found in the Lake Vista area of New Orleans. The Court finds that the absence or presence of piling were not even mentioned by the parties during negotiations. In any event the lack of piling is not a redhibitory vice.
“Third, as to the flooring in the bedroom next to the patio, it was established and not denied that water had seeped under the flooring in the bedroom from the patio. This was remedied by the defendants by recaulking and sealing in the rear of the patio adjacent to the bedroom. The Court feels that the purchaser was justified in removing part of the flooring in said bedroom to determine the existence and extent of the seepage damage. The Court examined the sub-flooring area in the bedroom after the recaulking and *651 sealing and found that the area is now perfectly dry. However, the Court feels that the contract price should be reduced by such an amount as is necessary to replace said flooring. The testimony indicated that this flooring could be replaced at a cost of $500.00, and the Court reduces the purchase price accordingly.
“Fourth, the Court finds that the air conditioning system is completely adequate, consisting of a three-ton unit to service an insulated enclosed area of 1,565 square feet. (TR. 69). The Plaintiff’s own expert testified that there should be one ton of air conditioning for each 500 square feet. The Court also finds that the auxiliary air conditioning unit in the kitchen is in operating order. However, certain repairs were needed in the two units which the Court fixes at $300.00 in value, which amount shall be deducted from the purchase price.
“Fifth, the Court finds that there are two cracks in the terrazzo of the living-dining room area and a crack in the patio. The Court visited the premises and determined that these cracks were not such as to be considered redhibitory defects and were no more than the usual cracks that exist in most terrazzo floors in the City of New Orleans. In view of the existence of these cracks and the willingness of the defendants to compensate vendee for the cost of remedying same, it is not necessary for the Court to go into the question of whether or not these cracks were obvious to the Plaintiff at the time the purchase agreement was signed. These cracks are no more than minor defects which can be easily remedied. The Court finds that the total expenditure necessary to remedy all of the cracks both in the living-dining room area and in the patio amounts to the sum of $1,000.-00, and the Court so reduces the purchase price * * * by the sum of $1,800.00, and orders the plaintiff to specifically perform the contract herein sued upon and to purchase the property 6302 Beauregard Avenue, for the price and sum of $59,200.00.”
Plaintiff-Appellant’s main contentions are:
1. That the defects are of such a nature as to render their correction impossible, because the defective foundation will cause their recurrence at any time in the future;
2. That the sales agreement does not give the right of specific performance to vendors, but merely the right to claim double the deposit;
■ 3. The fee of $300.00 allowed the attorney for the Defendant-real estate agent is excessive, because he took no part in the trial; and
4. Alternatively, the case should be remanded for further evidence concerning the nature and cost of making necessary repairs.
In the second contention, Plaintiff-Appellant is incorrect, because the sales agreement specifically gives both parties, vendors and vendee, the right either to claim double the deposit or the forfeiture of the deposit, or, at his or their option, the right to specific performance. The other contentions will be discussed later herein.
With reference to the law applicable, LSA-C.C. Art. 2520, provides:
“Redhibition is the avoidance of a sale on account of some vice or defect in the thing sold, which renders it either absolutely useless, or its use so inconvenient and imperfect, that is must be supposed that the buyer would not have purchased it, had he known of the vice.”
Our jurisprudence is clear that any hidden vices or defects, unknown to purchaser and not approved by him, give rise either to a cancellation of the sale (redhibition) or a reduction in the purchase price (quanti minoris). In a case where the court finds latent and remedial defects, *652 the contract will not be voided, but the purchase price reduced to compensate for the amount necessary to correct the defects. Daly v. Abramson, La.App., 117 So.2d 772; Loeb v. Staples, 234 La. 642, 101 So.2d 1; Lemonier v. Coco, 237 La. 760, 112 So.2d 436; Harding v. Ed. Taussig Edsel Motors, Inc., La.App., 130 So.2d 517; Cipriano v. Superior Realty & Construction Corp., 228 La. 1065, 84 So.2d 822; McEachern v. Plauche Lumber & Construction Co., 220 La. 696, 57 So.2d 405.
The expert testimony is conflicting and does not satisfy us that the defects render the building worthless or unlivable. We conclude, as the trial judge did, that the defects can be remedied. However, we do not find sufficient evidence in the record to fix the cost of making the necessary corrections and put the building in condition in which it should be for the purchase price of $58,000.00, plus $3,000.00 of household furniture included in the sale.
We have taken particular note of the testimony of the contractor who erected the residence. He admitted the original architectural plans provided for a piling foundation, which would have cost about $900.00, but the vendor-owners decided to substitute the concrete slab instead at a cost of only $90.00, thus sacrificing foundation stability for economy. However, we do not think this structural change, in view of the testimony that a vast majority of structures in that location rest on concrete slabs rather than piling, warrants our disagreeing with the district judge in his decision of quanti minoris, rather than redhibition.
Plaintiff-purchaser’s basic contention is that the cracking of the terrazzo floor and other defects were caused by the subsidence of the foundation due to subsoil conditions common to the general area. If so, the alleged defects here are not due to any defect in the basic design or construction of the foundation and superstructure, but to subsoil conditions common to all in the vicinity. The evidence preponderates that the basic plan of the foundation of this residence followed the pattern of a vast majority of the residences erected in the area, to-wit, no piling, but a concrete slab.
The purchase of a residence in an area subject to natural hazards, common to all, is a calculated risk and not subject to rescission for future occurrences, but only to relief for the cost of making repairs for defects then existing, except in the case of special warranty, misrepresentation or fraud.
In the case of Lemonier v. Coco, supra, our Supreme Court held that any successful action for the reduction of the purchase price, the amount to be awarded is the difference between the value of the thing sold, in its defective condition, and its value as warranted; but as the difference, with respect to realty is not readily and easily ascertainable, the allowable diminution is the cost necessary to convert an unsound structure into a sound one, citing LSA-C.C. Arts. 2520, etc., and 2541; that, in case of a reduction in price, the purchaser must prove, with reasonable certainty, the amount of diminution in value; that where such amount was not satisfactorily established in the trial court, the appellate court, in the interest of justice and in order that a proper judgment might be rendered between the parties, would remand the cause to the district court for introduction of additional evidence, citing Code of Practice Art. 906.
On the question of the fee allowed to vendors’ attorney, in view of our decision to remand for further evidence, the fixing of the fee at this time would be premature. If the purchaser (Plaintiff-Appellant) by competent evidence proves the cost of repairs is greatly in excess of what Defendant-vendors offered, he might not be in default in not accepting title; hence, not liable for Defendant-vendors attorney’s fee.
For the reasons assigned, the judgments appealed from, both on the main demand and in reconvention, are set aside and the cause remanded to the district court for *653 further proceedings, according to law and consistent with the views herein expressed, costs of this appeal to be paid by Plaintiff-Appellant. The assessment of other costs and fees to await the final determination of the litigation.
Judgments set aside. Case remanded.